

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00374-CV

_____

BEDROCK PROPERTY SOLUTIONS, LLC, AARON D'ORLANDO, AND ALAN D'ORLANDO, Appellants

V.

SR FRANCHISING, LLC, JEFFREY ALAN RUTTEN, AND CURT SKALLERUP, Appellees

---

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-350989-24

---

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

Following a contractual dispute between Appellants Bedrock Property Solutions, LLC; Aaron D'Orlando; and Alan D'Orlando (collectively, Bedrock) and Appellees SR Franchising, LLC; Jeffrey Alan Rutten; and Curt Skallerup (collectively, SR Franchising), Bedrock initiated an arbitration proceeding. SR Franchising filed an original petition in the trial court requesting declaratory judgment that Bedrock's claims were not arbitrable. Bedrock filed counterclaims, alleging the same claims from the arbitration proceeding. SR Franchising moved pursuant to Rule 91a to dismiss the counterclaims, contending that they were time barred, and requested attorney's fees. The trial court granted the Rule 91a motion and dismissed Bedrock's counterclaims. The parties then entered into a Rule 11 agreement providing that SR Franchising's declaratory-judgment claim was moot and that the trial court would consider the issue of attorney's fees by written submission. After the parties filed their respective motions and evidence, the trial court awarded attorney's fees to SR Franchising and signed a final judgment. Bedrock appealed.

In their "Issues Presented for Review"—which comprises over two pages of unbroken text—Bedrock raises several unenumerated, intersecting, and restated complaints. In what we construe as seven appellate issues, Bedrock complains that the trial court erred by (1) failing to provide its reasons for granting the Rule 91a motion, (2) denying leave to amend, (3) dismissing their counterclaims, (4) refusing to

rule on their motion to reform, (5) signing a final judgment that does not comport with the Rule 11 agreement, (6) awarding attorney's fees to SR Franchising, and (7) depriving Bedrock of due process. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Bedrock decided to pursue a franchising opportunity and connected with SR Franchising. SR Franchising provided an initial franchise disclosure to Bedrock on December 19, 2017, and made various representations to Bedrock regarding the franchise's projected revenue and expenses. On September 29, 2018, Bedrock and SR Franchising entered into a franchise agreement that contained an arbitration provision, which provided that (1) "[d]isputes concerning the validity or scope of [the arbitration provision], including whether a dispute is subject to arbitration [or] beyond the authority of the arbitrator(s)[,] shall be determined by a court of competent jurisdiction."[1] On October 11, 2018, SR Franchising provided a second disclosure to Bedrock. The second disclosure allegedly revealed inaccuracies and false statements in the first disclosure. Despite the second disclosure, Bedrock began operating their franchise.

On October 6, 2023, Bedrock filed a demand for arbitration against SR Franchising, describing the dispute as "[f]raud, breach of contract, and other common law and statutory violations." That same day, Bedrock also filed a federal

---

[1]The arbitration provision also mandated that any claims be brought within two years.

lawsuit against SR Franchising, asserting claims for (1) fraudulent inducement, (2) fraud by omission, (3) common law fraud, (4) negligent written misrepresentation, (5) negligent oral misrepresentation, (6) breach of contract, (7) breach of express warranties, (8) breach of implied warranties, and (9) violation of the Texas Deceptive Trade Practices Act (DTPA). On January 3, 2024—while the federal lawsuit was still pending—Bedrock filed a second demand for arbitration, alleging the same facts and claims from the 2023 demand for arbitration and the federal lawsuit. Later that month, SR Franchising moved to dismiss the federal lawsuit on the grounds that (1) Bedrock had failed to commence arbitration within the arbitration provision's two-year period and (2) the claims were barred by the applicable statute of limitations. Bedrock voluntarily dismissed the 2023 federal lawsuit without prejudice but refused to dismiss the arbitration proceedings.

On March 11, 2024, SR Franchising filed an original petition in state court, requesting a declaration that Bedrock's claims were not arbitrable and barred by the statute of limitations and seeking relief under the Texas Arbitration Act to stay and enjoin arbitration. Bedrock removed the case to federal court, and SR Franchising moved to remand the case to state court, arguing that there was no basis for federal subject-matter jurisdiction. Bedrock agreed, and the case was remanded back to state court.

Following the case's remand to state court, the parties agreed to stay the arbitration proceedings to (1) allow the parties to mediate the dispute and (2) permit

4

the trial court to determine the arbitrability issues raised in SR Franchising's petition. The parties participated in voluntary mediation in August 2024, which did not result in resolution.

On September 13, 2024, Bedrock filed an answer and counterclaims. Bedrock's answer explained that they agreed with SR Franchising's objection to arbitration and that "[t]he filing of [Bedrock's] counterclaims here demonstrates that [Bedrock] has chosen to litigate their claims in a court – this court, and not in an Arbitration." And their counterclaims alleged the same nine causes of action from their 2023 arbitration demand and the federal lawsuit. Bedrock's counterclaims further alleged, among other things, that "[SR Franchising's] wrongful and fraudulent conduct commenced almost immediately, before [Bedrock] entered into the Franchise Agreement, with [SR Franchising's] provision of a Franchise Disclosure Document ("FDD") in December 2017." Bedrock did not allege the accrual date of their counterclaims or otherwise plead when they discovered SR Franchising's wrongful conduct; Bedrock merely provided a loose chronology of the events giving rise to the counterclaims. The first date of conduct ascribed to SR Franchising was December 19, 2017 (the date of the initial disclosure), and the last date of ascribed conduct was January 2020.[2] The trial court set the case for trial on June 2, 2025.

---

[2]SR Franchising filed an answer to the counterclaims along with affirmative defenses. They pleaded that Bedrock's counterclaims were "barred by the applicable statute(s) of limitations."

SR Franchising moved to dismiss Bedrock's counterclaims pursuant to Rule 91a and requested attorney's fees, contending that the counterclaims had no basis in law because they were barred by the statute of limitations. SR Franchising argued that all of Bedrock's counterclaims "appear to be based on the same wrongful conduct: misrepresentations allegedly made prior to Bedrock's signing of the Franchise Agreement on September 29, 2018," and thus, Bedrock's counterclaims accrued when they entered into the contract on September 29, 2018. SR Franchising asserted that Bedrock's counterclaims were subject to a four-year or less statute of limitations, and therefore, the counterclaims—filed on September 13, 2024—were time barred. SR Franchising alternatively argued that even if the counterclaims did not accrue when Bedrock entered into the contract, they accrued by October 11, 2018—the date that Bedrock received the second disclosure and when they should have discovered the wrongful conduct. SR Franchising maintained that, irrespective of whether the counterclaims accrued on September 29, 2018, or October 11, 2018, the applicable statute of limitations had passed. A hearing on SR Franchising's motion was set for December 10, 2024.

Bedrock responded and argued that they had "plead[ed] with sufficient evidence and information to put [SR Franchising] on notice of each and every cause of action plead[ed] with sufficient clarity to make [SR Franchising's] Motion to Dismiss improper, and therefore [it] should be denied in its entirety." Bedrock also noted that they would file amended counterclaims and show "that all [counter]claims

6

were tolled and were not discovered until less than two years before the causes of action were filed."

On December 6, 2024, Bedrock filed amended counterclaims, alleging that they "could not reasonably discover the well-executed franchise fraud planned and executed by [SR Franchising] until mid-2023." SR Franchising replied and argued that Bedrock's amended counterclaims were untimely under Rule 91a.5(b) because they were not filed at least three days before the date of the scheduled hearing on the Rule 91a motion. SR Franchising maintained that Bedrock's allegations established that they knew or should have known of the facts giving rise to their causes of action by October 11, 2018, and that their response did nothing to alter this conclusion and failed to cite to any allegation in the counterclaims that would give rise to a tolling theory. Bedrock filed a sur-reply, arguing that their amended counterclaims were timely and, alternatively, requesting leave to amend.

Following a hearing on December 10, 2024, the trial court granted SR Franchising's Rule 91a motion and dismissed Bedrock's original counterclaims.[3] Bedrock filed a motion for rehearing, complaining that the trial court should have considered their amended counterclaims. Despite the trial court's dismissal of their counterclaims, Bedrock refused to dismiss the arbitration proceedings.

---

[3]The order noted that the trial court had considered "the motion to dismiss, the response and reply, and the arguments of counsel."

On May 23, 2025—the week before trial—Bedrock dismissed the arbitration proceedings with prejudice, mooting SR Franchising's request for declaratory relief. On May 29, 2025, the parties entered into a Rule 11 agreement. The agreement provided, among other things, that all pending motions would be denied as moot, that SR Franchising's declaratory judgment was rendered moot, that a trial was unnecessary, and that the trial court would determine SR Franchising's entitlement to attorney's fees and costs based on written submission.

SR Franchising filed their motion for attorney's fees and entry of final judgment, along with supporting exhibits and affidavits. Bedrock filed a response, a counter-affidavit, and a motion to reform the order dismissing their counterclaims. The motion to reform sought to vacate the trial court's order dismissing Bedrock's counterclaims based on "newly revealed evidence."[4] The motion to reform was not scheduled for a hearing.

SR Franchising filed a reply in support of their motion for attorney's fees and entry of final judgment, and the trial court heard oral argument on the motion. Following a hearing on the motion, the trial court signed a final judgment, confirming its dismissal of Bedrock's counterclaims with prejudice and awarding SR Franchising

---

[4]Bedrock claimed that SR Franchising had allegedly submitted a falsified email to the mediator during mediation in August 2024.

$302,040.88 in attorney's fees under the UDJA,[5] $4,623.42 in costs, and contingent appellate attorney's fees.[6] Bedrock filed this appeal.

## III. DISCUSSION

### A. TRIAL COURT'S REASONING

In their first issue, Bedrock contends that the trial court's order granting the Rule 91a motion was erroneous because it "provided no reasoning whatsoever, identified no defect, and failed to explain why the counterclaims were legally insufficient."[7]  This issue is unpreserved.

---

[5]The final judgment decreed that SR Franchising was "entitled to and shall recover from [Bedrock] [SR Franchising's] costs and reasonable and necessary attorneys' fees in connection with [SR Franchising's] defense of the two arbitrations Bedrock initiated before the American Arbitration Association, [SR Franchising's] defense of the same claims in a federal lawsuit, and [SR Franchising's] prosecution of this lawsuit and defense of [Bedrock's] Counterclaims."

[6]No findings of fact or conclusions of law were requested or filed.

[7]Bedrock cites no authority in support of their contention that the trial court was required to specify its reasons for granting the Rule 91a motion.  *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain appropriate citations to authorities).

Texas Rule of Civil Procedure 91a.2 requires that a motion to dismiss state that it is made pursuant to the rule, identify each cause of action addressed, and state specifically the reasons the cause of action has no basis in law, fact, or both.  *See* Tex. R. Civ. P. 91a.2.  But Rule 91a does not impose a parallel requirement on the trial court's order granting such a motion.  *See id.*  Indeed, several of our sister courts have held that a trial court need not specify its reasons for granting a Rule 91a motion.  *See e.g.*, *Smart v. Prime Mortg. & Escrow, LLC*, 659 S.W.3d 155, 162 (Tex. App.—El Paso 2022, pet. denied) ("Appellant cites no other authority in support of his argument that a trial court is required to articulate a specific explanation for granting a Rule 91a motion."); *Emmanuel v. Izoukumor*, 611 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("When, as here, the trial court does not specify the ground on

9

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. *See* Tex. R. App. P. 33.1(a)(1)(A). If a party fails to do this, error is not preserved. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). Bedrock did not present to the trial court a timely request, objection, or motion regarding this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A). Accordingly, we hold that this complaint was not preserved.

We overrule Bedrock's first issue.

## B. AMENDED COUNTERCLAIMS

In their second issue, Bedrock argues that the trial court's order granting the Rule 91a motion was erroneous because the trial court should have granted leave to amend and because any defects in their pleadings were curable by the amended counterclaims. We disagree.

Bedrock filed their original counterclaims on September 13, 2024. SR Franchising filed their Rule 91a motion to dismiss on November 12, 2024, and a hearing on the motion was scheduled for Tuesday, December 10, 2024. On Friday,

---

which it relied, a party appealing the grant of a motion to dismiss under Rule 91a must challenge every ground on which the trial court could have granted the motion."); *Smale v. Williams*, 590 S.W.3d 633, 637 (Tex. App.—Texarkana 2019, no pet.) ("Rule 91a does not require such specification in its order."); *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 246 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("[T]rial judges need not specify their reasons for granting a Rule 91a motion.").

December 6, 2024, Bedrock filed their amended counterclaims, and SR Franchising objected that the amended counterclaims were untimely filed.

Texas Rule of Civil Procedure 91a.5(b) provides that the plaintiff—here, the counter-plaintiff—may amend "the challenged cause of action" but only if done "at least 3 days before the date of the [motion to dismiss] hearing." Tex. R. Civ. P. 91a.5(b) (stating that movant may file an amended motion if nonmovant "amends the challenged cause of action at least 3 days before" the hearing date). The trial court "must not consider" an untimely filed amendment. Tex. R. Civ. P. 91a.5(c).

Texas Rule of Civil Procedure 4 provides that "Saturdays, Sundays, and legal holidays shall not be counted for any purpose in any time period of five days or less in these rules" except for time computations in connection with Rules 21 (filing and service of pleadings and motions) and 21a (methods of service). Tex. R. Civ. P. 4.

Thus, to be timely under Rule 91a.5, Bedrock had to file their amended counterclaims by Thursday, December 5, 2024. *See* Tex. R. Civ. P. 91a.5(b), 4. But Bedrock did not file their amended counterclaims until Friday, December 6, 2024, making them untimely. *See* Tex. R. Civ. P. 91a.5(b), 4.

Accordingly, Rule 91a.5 precluded the trial court from considering the amended counterclaims when ruling on SR Franchising's Rule 91a motion.[8] *See* Tex.

---

[8]Rule 91a.5(c)'s language is unambiguous: the trial court "must not consider" an untimely filed amendment. Tex. R. Civ. P. 91a.5(c). Bedrock has cited no authority that permits the trial court—even if it were amenable and so inclined—to grant leave to amend for an untimely amendment under Rule 91a.5. *See id.*

11

R. Civ. P. 91a.5(c); *see also Blevins v. Brown*, No. 07-25-00199-CV, 2026 WL 785257, at *2 (Tex. App.—Amarillo Mar. 19, 2026, no pet.) (affirming trial court's refusal to consider plaintiff's untimely amended petition filed in connection with Rule 91a motion to dismiss and holding that Rule 91a.5 controls over Rule 65's general superseding principle).

We overrule Bedrock's second issue.

## C. DISMISSAL OF COUNTERCLAIMS

In their third issue, Bedrock asserts that the trial court erred by granting the Rule 91a motion because the trial court "improperly resolved fact disputes, limitations, and other matters outside Rule 91a's scope." We disagree.

### 1. Standard of Review and Applicable Law

Rule 91a is a procedural vehicle for early dismissal of baseless causes of action. *Sagredo v. Ball*, 689 S.W.3d 407, 413 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (op. on reh'g) (citing Tex. R. Civ. P. 91a.1). A trial court properly dismisses a cause of action pursuant to Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought" or "no reasonable person could believe the facts pleaded." *Id.* at 413–14.

Rule 91a "permits motions to dismiss based on affirmative defenses."[9] *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020). "In

---

[9]Bedrock broadly asserts that a trial court may not consider affirmative defenses when ruling on a Rule 91a motion. But we have held that "a [trial] court

ruling on a Rule 91a motion to dismiss, the trial court may not consider evidence and must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits." *Triple P.G. Sand Dev., LLC v. Del Pino*, 649 S.W.3d 682, 694 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (citing Tex. R. Civ. P. 91a.6). The trial court may also "consider the defendant's pleadings if doing so is necessary to make the legal determination of whether an affirmative defense is properly before the court." *Bethel*, 595 S.W.3d at 656; *see also Dailey v. Thorpe*, 445 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that breach-of-fiduciary-duty claim had no basis in law because pleaded facts affirmatively demonstrated that alleged breach occurred after fiduciary relationship ceased).

We perform a de novo review to determine whether the defendant is entitled to a dismissal under the facts alleged. *Triple P.G. Sand Dev.*, 649 S.W.3d at 693; *Farmers*, 621 S.W.3d at 266. We must construe the pleadings in favor of the plaintiff, examine the intent of the pleader, and accept as true the factual allegations made by the plaintiff. *Vasquez v. Legend Nat. Gas III, LP*, 492 S.W.3d 448, 450 (Tex. App.—San Antonio 2016, pet. denied).

---

may grant a Rule 91a motion to dismiss on limitations grounds." *Quinn v. State Farm Lloyds*, No. 02-22-00191-CV, 2023 WL 3749932, at *10 (Tex. App.—Fort Worth June 1, 2023, no pet.).

13

Fraud, breach-of-contract, and breach-of-warranties claims are subject to a four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(4) (fraud-based claims), .051 (breach-of-contract claims); Tex. Bus. & Com. Code § 2.725 (breach-of-contract and breach-of-warranties claims). Negligent-misrepresentation and DTPA claims are subject to a two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a) (negligent-misrepresentation claims); Tex. Bus. & Com. Code § 17.565 (DTPA claims).

"A statute of limitations does not begin to run until the cause of action accrues." *Hou. Endowment Inc. v. Atl. Richfield Co.*, 972 S.W.2d 156, 159 (Tex. App.—Houston [14th Dist.] 1998, no pet.). "Generally, a cause of action accrues when a wrongful act causes a legal injury." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011).

## 2. Analysis

As noted, Bedrock brought nine counterclaims: (1) fraudulent inducement, (2) fraud by omission, (3) common law fraud, (4) negligent misrepresentation as to written statements, (5) negligent misrepresentation as to oral omissions, (6) breach of contract, (7) breach of express warranties, (8) breach of implied warranties, and (9) violation of the DTPA. Counterclaims one through three and six through eight are subject to a four-year statute of limitations, and counterclaims four, five, and nine are subject to a two-year statute of limitations.

14

The counterclaims allege that SR Franchising's "wrongful and fraudulent conduct commenced almost immediately, before [Bedrock] entered into the [contract]"; that Bedrock had been "induce[d] into entering into the [contract]"; and that they "would not have moved forward without the false assurances." The counterclaims do not, however, allege an accrual date,[10] assert that Bedrock was delayed in discovering SR Franchising's conduct giving rise to the counterclaims, or otherwise advance a theory that would delay the accrual of counterclaims.[11] The last date in the counterclaims that ascribes conduct to SR Franchising—or Bedrock for that matter—is January 2020.[12]

---

[10]SR Franchising asserts that, because their alleged wrongful conduct—false assurances and misrepresentation—had occurred before the parties entered into the contract, the counterclaims accrued on the date that the parties entered into the contract—that is, September 29, 2018. Thus, SR Franchising contends that the statute of limitations lapsed on September 29, 2020, and September 29, 2022.

[11]And their appellate brief provides no greater elaboration or clarity. Rather, they assert, in a footnote, that "alleged delayed discovery of the fraud, ongoing nondisclosure before and after execution of the franchise documents, continuing misrepresentations regarding feasibility and competition, and reliance that extended well into the franchise relationship" negate any limitations issue. But their counterclaims make no mention whatsoever of "delayed discovery" or otherwise assert that they were delayed in discovering SR Franchising's alleged misrepresentations. Indeed, their untimely filed amended counterclaims outline their delayed discovery of SR Franchising's misrepresentations, but as we held above, the trial court could not consider—nor can we—the amended counterclaims. *See* Tex. R. Civ. P. 91a.5(c).

[12]Bedrock pleaded that "[SR Franchising] employees, in January 2020, assured Bedrock that the revenue numbers were not indicative of the park's commercial potential and suggested implementing various strategies to increase revenue, including

15

Construing the pleadings liberally in Bedrock's favor, their counterclaims accrued—at the latest—in January 2020. *See Vasquez*, 492 S.W.3d at 450. Thus, the statute of limitations lapsed on all Bedrock's counterclaims by January 2024, but Bedrock did not file their counterclaims until September 2024. Because Bedrock's pleadings demonstrate that their counterclaims had accrued no later than January 2020 and because the statute of limitations for these counterclaims were subject to a two-year or four-year statute of limitations, the statute of limitations had lapsed by the time they filed their counterclaims in September 2024. We thus conclude that the facts in Bedrock's counterclaims conclusively established that their claims against SR Franchising were time-barred, and accordingly, limitations constituted appropriate grounds for dismissal under Rule 91a. *See Bethel*, 595 S.W.3d at 656; Tex. R. Civ. P. 91a.1. Accordingly, we hold that the trial court did not err by granting SR Franchising's Rule 91a motion to dismiss.

We overrule Bedrock's third issue.

### D. MOTION TO REFORM

In their fourth issue, Bedrock complains that the trial court erred by refusing to rule on their motion to reform.[13] But Bedrock did not present to the trial court a

---

modifying pricing structures and implementing targeted marketing campaigns." The counterclaims do not contain the specific date of this encounter.

[13]Bedrock's motion to reform was filed on June 20, 2025, and the trial court's final judgment was signed on June 30, 2025. The motion to reform alleged that

16

timely request, objection, or motion regarding this complaint.[14]  *See* Tex. R. App. P.

33.1(a)(1)(A).   Accordingly, we hold that this complaint was not preserved.[15]   *See*

---

SR Franchising had materially altered an email during mediation by including language that did not appear in the original document.

[14]Although this issue is unpreserved, there are noteworthy gaps in Bedrock's complaint.  First, the record reflects that Bedrock did not request a hearing or pursue a ruling on their motion to reform from the trial court.  A movant bears an affirmative duty to request a hearing on its pending motion and to actively pursue a ruling from the trial court.  *See Grozier v. L-B Sprinkler & Plumbing Repair*, 744 S.W.2d 306, 312 (Tex. App.—Fort Worth 1988, writ denied) (op. on reh'g) ("The court is not required to wait upon the dallying of the movant.").  When, as here, a party files a motion to reform before entry of final judgment but never sets the motion for a hearing, never obtains a ruling, or never orally presents the motion to the trial court, the party cannot establish reversible error on appeal based on the trial court's failure to rule.  *See id.*  Second, Bedrock asserts that "a judgment entered without ruling on a pending motion is not final and constitutes reversible error."  Bedrock cites no authority in support of this assertion.  *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain appropriate citations to authorities); *cf. NexGen Broadband, LLC v. Quanta Telecomm. Servs., LLC*, No. 01-23-00520-CV, 2024 WL 3973439, at *14 (Tex. App.—Houston [1st Dist.] Aug. 29, 2024, no pet.) (rejecting argument that pending pre-judgment motion for reconsideration rendered subsequent final judgment non-final and holding that "a pending motion for new trial does not render a final judgment not final" and that there was "no reason to treat a motion for reconsideration differently").  A final judgment is one that (1) "actually disposes of every pending claim and party" or (2) "clearly and unequivocally states that it finally disposes of all claims and all parties."  *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001).  Here, the trial court's final judgment clearly and unequivocally states that it is final:  "This judgment finally disposes of all parties and claims and is appealable as a final judgment."  And in any event, the final judgment provides that "[a]ll relief not expressly granted herein is denied."

[15]We note that Bedrock misquotes and misrepresents the record, claiming that "[t]he Final Judgment itself acknowledges that the [trial] court 'did not consider' the Motion to Reform" and that "[t]his express refusal to rule confirms that the judgment was entered while dispositive matters remained pending."  First, Bedrock's purported "did not consider" quote is not contained in the final judgment, and the final judgment *does not* acknowledge that the trial court refused to consider Bedrock's

17

*Starnes v. Holloway*, 779 S.W.2d 86, 98 (Tex. App.—Dallas 1989, writ denied) (holding that where no ruling was entered on appellants' motion to reform and no objection was made to trial court's failure to rule, error was not preserved for appellate review); *see also Harris Cent. Appraisal Dist. v. Hou. Pipe Line Co*, 706 S.W.3d 568, 577 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (clarifying that "a mere failure to rule is not one and the same thing as a refusal to rule" and that "[a] trial court must neglect or decline to rule in the face of an objection to its failure to rule in order for a party to preserve error based on the court's refusal to rule").

We overrule Bedrock's fourth issue.

### E. RULE 11 AGREEMENT

In their fifth issue, Bedrock maintains that the trial court's final judgment does not comport with the Rule 11 agreement.[16] But Bedrock did not present to the trial court a timely request, objection, or motion regarding this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A). Accordingly, we hold that this complaint was not preserved. *See Stubbs v. Ortega*, 977 S.W.2d 718, 723 (Tex. App.—Fort Worth 1998, pet. denied) (holding that error preservation rules apply to Rule 11 agreements and that failure to

---

motion to reform. Second, Bedrock does not provide citation to the record where the trial court expressly refused to rule on the motion. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain appropriate citations to the record).

[16]Bedrock asserts that the trial court "entered a Final Judgment inconsistent with the Stipulation's express terms," but they do not explain how the final judgment is inconsistent. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain a clear and concise argument for the contentions made).

18

timely object to trial court's modification of such an agreement waives the right to complain on appeal); *see also Tex. Tax Sols., LLC v. City of El Paso*, 593 S.W.3d 903, 912 (Tex. App.—El Paso 2019, no pet.) (holding that party waived its Rule 11 complaint on appeal by failing to properly preserve issue in trial court).

We overrule Bedrock's fifth issue.

## F. ATTORNEY'S FEES

In their sixth issue, Bedrock maintains that the trial court's attorney's fee awards were erroneous. The trial court awarded $302,040.88 in trial attorney's fees and $180,000[17] in contingent appellate attorney's fees. Bedrock, in several subparts, challenges the trial court's awards of trial attorney's fees and contingent appellate attorney's fees. We will discuss each in turn.

### 1. Bedrock's Evidence

Bedrock first complains that the trial court erred by refusing to consider or admit Bedrock's attorney's fee-expert affidavit.[18] But Bedrock did not present to the

---

[17]The $180,000 is an aggregated awarded. The trial court specifically awarded $60,000 to respond to an appeal to a Texas intermediate court of appeals; $15,000 to prepare for and present oral argument, if oral argument is requested; $35,000 to respond to or file a petition for review, if filed, with the Texas Supreme Court; $50,000 to provide full briefing on the merits, if full briefing is requested; and $20,000 to prepare for and present oral argument to the Texas Supreme Court, if oral argument is requested.

[18]Bedrock's attorney submitted a counter-affidavit in response to SR Franchising's motion for attorney's fees.

19

trial court a timely request, objection, or motion regarding this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A). Accordingly, we hold that this complaint was not preserved.[19]

## 2. Prevailing Party

Bedrock next argues that the trial court's attorney's fee awards were erroneous because SR Franchising were not the prevailing parties under the UDJA since they "obtained no substantive judicial relief whatsoever." We disagree.

The UDJA provides: "In any proceeding under this chapter, the [trial] court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. "The plain language of the UDJA authorizes courts to award equitable and just fees in any proceeding under the Act; it does not require the trial court to consider or render judgment on the merits of that claim." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). "Indeed, under [S]ection 37.009, a trial court has discretion to even award attorney's fees to a nonprevailing party." *Severs v. Mira Vista Homeowners Ass'n*, 559 S.W.3d 684, 712 (Tex. App.—Fort Worth 2018, pet. denied).

Here, SR Franchising's petition requested that the trial court grant a declaratory judgment and award them reasonable and necessary attorney's fees. *See* Tex. Civ. Prac. & Rem. Code § 37.002. Thus, because this was a proceeding under the UDJA,

---

[19]Bedrock does not provide citation to the record where the trial court allegedly refused to consider or to admit the counter-affidavit. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain appropriate citations to the record).

the trial court had discretion to award attorney's fees—irrespective of whether SR Franchising was a nonprevailing party. *See Severs*, 559 S.W.3d at 712. Accordingly, we hold that this complaint lacks merit.[20]

### 3. Trial Attorney's Fees

Bedrock asserts that the trial court's attorney's fee awards must be reversed because "the trial court ignored controlling supreme court lodestar requirements and accepted evidentiarily [sic] insufficient, unsegregated, and unreliable billing records." More specifically, Bedrock contends that SR Franchising (1) failed to satisfy the framework for the lodestar requirements, (2) did not segregate their fees, (3) failed to show that they had actually incurred the fees, and (4) presented evidence that was either vague or conclusory or insufficient.

### a. Lodestar Requirements

Bedrock contends that the trial court abused its discretion by awarding attorney's fees because it did not require SR Franchising to satisfy the lodestar framework.[21] We disagree.

---

[20]In any event, SR Franchising also requested attorney's fees in their Rule 91a motion to dismiss. Rule 91a.7 provides that the trial court "may award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action." Tex. R. Civ. P. 91a.7. Here, the trial court granted SR Franchising's Rule 91a motion to dismiss.

[21]A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its

21

A party seeking recovery of attorney's fees must meet the framework for the lodestar method for determining the reasonableness and necessity of attorney's fees:

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the [factfinder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The [factfinder] then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The [factfinder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).

Here, SR Franchising was represented by an attorney who was admitted pro hac vice and another attorney who served as local counsel. Both attorneys provided detailed fee affidavits. The attorney who was admitted pro hac vice attested to 476.6 hours worked, a $480.25 hourly rate, and a $228,888.74 total fee. She further attested that the hours worked and the hourly rate constitute the reasonable and necessary hours and rates required to perform the services.

---

discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low v. Henry*, 221 S.W.3d 609, 620 (Tex. 2007). A trial court also abuses its discretion by ruling without supporting evidence. *In re AutoZoners, LLC*, 694 S.W.3d 219, 223 (Tex. 2024) (orig. proceeding); *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 482 (Tex. 2022). But no abuse of discretion occurs when the trial court decides based on conflicting evidence, so long as some substantive and probative evidence supports its decision. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014); *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

The attorney who served as local counsel attested to 151.8 hours worked, a $481.89 hourly rate, and a $73,152.14 total fee. He further attested that the hours worked and the hourly rate constituted the reasonable and necessary hours and rates required to perform the services. In addition to their affidavits, the attorneys provided contemporaneous billing records that supported their affidavits and fee opinions.[22]

We conclude that SR Franchising's attorneys' fee affidavits satisfied the lodestar framework by providing (1) the hours worked, (2) the hourly billing rate, and (3) the total fees.[23] Accordingly, we hold that this complaint lacks merit.

### b. Segregation of Recoverable Fees

Bedrock complains that SR Franchising "failed to segregate recoverable from unrecoverable fees." But Bedrock did not present to the trial court a timely request, objection, or motion regarding this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A). Accordingly, we hold that this complaint was not preserved. *See Huey–You v. Huey–You*, No. 02-16-00332-CV, 2017 WL 4053943, at *2 (Tex. App.—Fort Worth Sept. 14, 2017, no pet.) ("Huey–You did not object based on a failure to segregate before the trial court issued its ruling and, thus, any error was waived."); *Fire Ins. Exch.*

---

[22]Bedrock does not challenge the reasonableness or necessity of (1) the hours worked, (2) the hourly billing rate, or (3) the total fees.

[23]The trial court's award was the exact amount of the total fees attested to in the attorneys' fee affidavits.

*v. Kennedy*, No. 02-11-00437-CV, 2013 WL 441088, at *5 (Tex. App.—Fort Worth Jan. 31, 2013, pet. denied) ("[I]f no objection is made to a failure to segregate attorney's fees . . . at the time the evidence of attorney's fees is presented . . . , the error is waived.").

### c. Fees Incurred

Bedrock next maintains that SR Franchising "provided no evidence establishing whether they actually paid any invoices; whether the bills remained outstanding; whether their insurer or parent company paid the fees; or whether they were under any contractual obligation to pay the asserted amounts." We disagree.

In her affidavit, one of SR Franchising's attorneys stated that:

> [t]he services that are described in detail on the invoices were performed on behalf of [SR Franchising] and [SR Franchising] have the obligation and ability to pay for those services and have been paying for those services, as well as the costs and expenses that counsel has incurred on their behalf. [SR Franchising] have always paid for their legal services in the nearly eight years that this firm (and its predecessor law firm) has represented them.

Bedrock provides no argument or citation to the record regarding why SR Franchising's attorney's affidavit is insufficient to show that SR Franchising incurred the fees. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain a clear and concise argument for the contentions made, with appropriate citations to the record). We conclude that the record contains evidence that SR Franchising incurred the fees. Accordingly, we hold that this complaint lacks merit.

#### d. SR Franchising's Evidence

Bedrock attacks SR Franchising's attorney's-fee evidence by asserting that SR Franchising "submitted block-billed spreadsheets, vague or conclusory time entries (*e.g.*, 'review file,' 'prepare motion'), no breakdown of time per task, no testimony explaining the need for staffing with multiple timekeepers, and no evidence linking hours billed to results obtained."[24] The record belies these assertions.

Although contemporaneous billing records are not required, they are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019). At a minimum, the claimant must prove (1) the particular services performed, (2) who performed them, (3) approximately when they were performed, (4) the reasonable time required to perform them, and (5) the reasonable hourly rate for each person performing them. *Id.* at 498–99.

First, Bedrock provides no argument regarding how SR Franchising's billing records are "vague or conclusory." *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain a clear and concise argument for the contentions made). Instead, they make this broad claim and cite 415 pages of the clerk's record—the entirety of SR Franchising's motion for attorney's fees and attached evidence. *See id* (requiring appellant's brief to contain appropriate citations to the record). Bedrock does not

---

[24]As noted, Bedrock does not challenge the reasonableness or necessity of the fees; instead, they attack SR Franchising's evidence.

identify which entries are vague or conclusory or explain why we should conclude as much. Notwithstanding Bedrock's failure to provide argument or citation, we have reviewed SR Franchising's billing records, and we conclude that the records are not block-billed spreadsheets, vague, or conclusory. Rather, the records consist of seventy-one detailed pages that outline (1) the particular services performed, (2) who performed them, (3) approximately when they were performed, (4) the time required to perform them, and (5) the hourly rate for each person performing them.

Second, the billing records *do* break down the time required to perform each task. Every billing entry provides the time required to perform the particular service performed.

Third, SR Franchising's attorney's affidavit *does* explain the need for staffing with multiple timekeepers and *does* link the hours billed to the results obtained. In pertinent part, the attorney's affidavit provides:

- The novelty and difficulty of the questions involved is reflected in the multiplicity of actions: two arbitrations, a federal lawsuit, and this Texas state court action, which was removed to federal court and then remanded to this Court. [SR Franchising's] attorneys had to expend time researching and addressing issues raised by the novel and unique circumstances of litigation in multiple forums. [SR Franchising's] attorneys were required to protect [SR Franchising's] interests in the face of [Bedrock's] multi-forum procedural maneuvers, all while being careful not to run afoul of issues such as waiver, res judicata, or issue preclusion. These factors necessitated increased attention, often in a short time frame, from multiple attorneys and staff.

26

- For similar reasons to those addressed above, the complexity, the amount at issue, and the actions of [Bedrock's] counsel necessitated that [SR Franchising] have skilled and experienced counsel and staff to represent them, including preparing and strategizing for whatever procedural maneuvers that [Bedrock] attempted. When possible, [SR Franchising's local counsel] assigned attorneys with lower rates to perform work appropriate for their level and experience. [Bedrock] simultaneously prosecuted cases in arbitration, federal court and state court, all of which required analysis of how to handle cases in multiple venues and obtain dismissal of the claims and arbitrations based on the parties' contracts and in light of [Bedrock's] procedural maneuvers in multiple venues.

- [SR Franchising] have prevailed in full in this matter. [SR Franchising] succeeded in obtaining a dismissal with prejudice of [Bedrock's] Counterclaims, and [SR Franchising] obtained dismissal with prejudice of the Arbitrations, which is the result they sought in their affirmative claims brought in this lawsuit.

Considering SR Franchising's billing records and affidavits, we conclude that Bedrock's assertions that SR Franchising presented "vague or conclusory time entries" or that there was "no breakdown of time per task, no testimony explaining the need for staffing with multiple timekeepers, and no evidence linking hours billed to results obtained" lacks merit. Accordingly, we hold that the trial court did not err by awarding trial attorney's fees to SR Franchising.

### 4. Appellate Attorney's Fees

Finally, Bedrock contends that "the conditional appellate fee awards must be reversed because they were speculative, unsupported, and not based on any lodestar evidence." We disagree.

27

### a. Standard of Review and Applicable Law

When reviewing a trial court's award of attorney's fees, an appellate court must ensure that the record contains sufficient evidence to support such an award. *Yowell*, 620 S.W.3d at 354; *Rohrmoos Venture*, 578 S.W.3d at 505.

Regarding the sufficiency of the evidence to support the reasonableness and necessity of conditional appellate attorney's fees, they "must be projected based on expert opinion testimony." *Yowell*, 620 S.W.3d at 355. The party seeking to recover contingent appellate fees must provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services.[25] *Id.*

### b. Analysis

As an initial matter, we address Bedrock's assertion that "a party seeking conditional appellate fees must provide separate, stage-specific lodestar evidence for each appellate level." This assertion is incorrect. "Because an award of conditional appellate attorney's fees depends on the outcome of the appeal and is not a final award until an appellate court issues its final judgment, the full evidentiary requirements of *Rohrmoos* are not implicated." *Porter v. Porter*, No. 04-20-00229-CV, 2021 WL 2117923, at *4 (Tex. App.—San Antonio May 26, 2021, no pet.). Rather, as

---

[25]As to appellate services, "all appeals involve researching, preparing, and drafting a brief, so remanding this case for a more specific description of particular services would provide little if any benefit." *Granbury SNF LLC v. Jackson*, No. 02-24-00248-CV, 2025 WL 807497, at *13 (Tex. App.—Fort Worth Mar. 13, 2025, no pet.).

the Texas Supreme Court has made clear, a party seeking to recover contingent appellate fees merely needs to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services. *Yowell*, 620 S.W.3d at 355.

As noted, in support of their request for attorney's fees, SR Franchising's attorneys provided detailed affidavits. As pertinent to the issue of contingent appellate attorney's fees, the SR Franchising's pro hac vice attorney's affidavit provides:

> [b]ased on the case law, my experience,[26] and my consultation with Mr. Vickers,[27] in order to effectively represent [SR Franchising's] interests in an appeal to the Court of Appeals, appellate counsel will need to review and summarize the entire clerk's and reporter's record to appropriately prepare a response. This would necessitate review of the record by appellate counsel at the applicable rates depending on the size of the record the appellant designates. Depending on the complexity and number of issues the appellant raises, [SR Franchising] can reasonably expect counsel to spend significant time with the research, drafting, and preparation of court of appeals briefing. The Court of Appeals regularly permits oral argument in cases such as this. Appellate counsel would require additional time to prepare for and attend oral argument. [SR Franchising] also can reasonably expect to incur fees to handle potential post-submission briefing issues that may arise.
>
> [SR Franchising] will incur additional fees if this case proceeds to the Texas Supreme Court. For the petition for review stage, appellate counsel would need to review the record, consider the issues, and

---

[26]The attorney set out her qualifications earlier in the affidavit. Because Bedrock does not challenge her qualifications to provide an expert opinion, we do not recite her experience.

[27]Mr. Vickers served as SR Franchising's local counsel.

29

research and prepare at least one filing. Preparation for a Texas Supreme Court argument is a complex and time-intensive process that requires additional research, review and responsiveness to the court of appeals opinion, and time spent to draft additional briefs. If the Texas Supreme Court requests full briefing, [SR Franchising] will incur additional fees to permit counsel to further research, brief, and develop the issues raised. If the Texas Supreme Court orders oral argument, [SR Franchising] will incur additional fees to further study the case law and the record, to create an outline, to moot the argument, and to otherwise prepare for and attend the argument.

Despite the inherent uncertainty in the reasonable and necessary number of hours required to represent [SR Franchising] in an appeal of this matter, based on my familiarity with the issues involved, my experience with appeals, and my consultation with Mr. Vickers, it is my opinion that a reasonable hourly rate for my work on an appeal in this matter would be $625 per hour, and a reasonable hourly rate for appellate counsel's work on an appeal in this matter would be $625 per hour. I base these rates off of the same hourly rates that were reasonable for the handling of this litigation because they are also reasonable hourly rates for appeals. In my opinion, based on these hourly rates, and my familiarity with the amount of attorney hours it takes to prepare the various forms of post-judgment motions, the amount of reasonable and necessary discounted attorneys' fees for an appeal are as follows:

(a) $60,000.00  To respond to an appeal to a Texas intermediate court of appeals[;]

(b) $15,000.00  To prepare for and present oral argument, if oral argument is requested;

(c) $35,000.00  To respond to or file a petition for review, if filed, with the Texas Supreme Court;

(d) $50,000.00  To provide full briefing on the merits, if full briefing is requested;

(e) $20,000.00  To prepare for and present oral argument to the Texas Supreme Court, if oral argument is requested.

30

These appellate fee amounts are conditioned on [SR Franchising's] success on such an appeal.

Here, SR Franchising's attorney not only provided evidence about the services she reasonably believed would be necessary to defend the appeal and a reasonable hourly rate for those services but also discussed the various stages of the appellate process and described some of the services for those stages. *See Yowell*, 620 S.W.3d at 355. We have affirmed contingent appellate fees based on less evidence. *See e.g.*, *Edinger v. Stillwaters Pool Co.*, No. 02-24-00527-CV, 2025 WL 2423505, at *17 (Tex. App.—Fort Worth Aug. 21, 2025, no pet.); *Granbury SNF LLC*, 2025 WL 807497, at *14; *Johnson v. Bearfoot Cos.*, No. 02-23-00366-CV, 2024 WL 2202033, at *10 (Tex. App.—Fort Worth May 16, 2024, no pet.) ("Hill's affidavit, in which he set forth his hourly rate and opined regarding the anticipated costs of an appeal, was sufficient.").

Accordingly, because SR Franchising's attorney provided an affidavit detailing the services she reasonably believed would be necessary to defend the appeal and a reasonable hourly rate for those services, we hold that the evidence is legally sufficient to support the trial court's award of contingent appellate attorney's fees. *See Yowell*, 620 S.W.3d at 355; *see also Johnson*, 2024 WL 2202033, at *10 (holding that attorney's affidavit that set forth his hourly rate and opined regarding the total anticipated costs of an appeal was sufficient to support trial court's award of contingent appellate attorney's fees); *Lakeway Psychiatry & Behav. Health, PLLC v. Brite*, 656 S.W.3d 621, 640 (Tex. App.—El Paso 2022, no pet.) (holding that evidence was sufficient to support

award of contingent appellate attorney's fees when attorney testified regarding his reasonable hourly rate and "testified to the amounts requested for each stage in the appeal with the Court of Appeals and with the Texas Supreme Court, differing between appellate services such as briefing and oral argument"); *Eichhorn v. Eichhorn*, No. 03-20-00382-CV, 2022 WL 1591709, at \*14–15 (Tex. App.—Austin May 20, 2022, no pet.) (holding that evidence was sufficient to support award of contingent appellate attorney's fees when the attorney testified regarding his hourly rate and testified about the fees likely to be incurred at five different stages of appellate process).

We overrule Bedrock's sixth issue.

## G. DUE PROCESS

In their seventh issue, Bedrock alleges that "the trial court's procedures deprived [Bedrock] of due process and failed to provide a fair or neutral adjudication." This issue, which also contains several subparts, is unpreserved.

### 1. Fee-Briefing Schedule

Bedrock first complains that "the stipulation's compressed fee-briefing schedule and the trial court's refusal to permit live expert testimony deprived [Bedrock] of due process." This complaint is unpreserved and unsupported by the record. Bedrock did not present to the trial court a timely request, objection, or

32

motion regarding this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A). Accordingly, we hold that this complaint was not preserved.[28] *See Stubbs*, 977 S.W.2d at 723.

### 2. Pending Motions

Bedrock next contends that "the trial court's refusal to rule on pending motions deprived [Bedrock] of a meaningful opportunity to be heard and is a structural due-process violation." We disposed of this complaint in Bedrock's fourth issue. Bedrock did not present to the trial court a timely request, objection, or motion regarding this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A). Accordingly, as we held above, this complaint was not preserved. *See Starnes*, 779 S.W.2d at 98.

---

[28]Even if this complaint was preserved, it is unsupported by the record. Bedrock expressly consented to proceeding with a compressed fee-briefing schedule and without live expert testimony. The Rule 11 agreement—signed by Bedrock on May 28, 2025—provides:

> [t]he Parties waive the right to a trial on [SR Franchising's] claims for attorneys' fees and any other related relief to which they may be entitled. Rather, the amount to be awarded to [SR Franchising] for attorneys' fees, costs, postjudgment interest and any other related relief to which they may be entitled will be determined by the Court on written motion.
>
> The motion will be heard by the Court on June 30, 2025, 10:30 am.

The trial court considered SR Franchising's claims for attorney's fees by written motion on June 30, 2025, and Bedrock does not provide citation to the record where the trial court allegedly deviated from the Rule 11 agreement. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain appropriate citations to the record).

### 3. Bias and Independent Judgment

Finally, Bedrock alleges that "the trial court demonstrated bias or failed to exercise independent judgment by adopting [SR Franchising's] proposed relief and rejecting [Bedrock's] evidence without consideration." But Bedrock did not present to the trial court a timely request, objection, or motion regarding this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A). Accordingly, we hold that this complaint was not preserved.[29] *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (holding that an "objection to a trial court's alleged improper conduct or comment must be made when it occurs if a party is to preserve error for appellate review").

We overrule Bedrock's seventh issue.

## IV. CONCLUSION

Having overruled Bedrock's seven issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: July 23, 2026

---

[29]Even if this complaint was preserved, it is unsupported by the record. As we held above, the trial court did not err by granting the Rule 91a motion to dismiss or by awarding attorney's fees to SR Franchising. Thus, contrary to Bedrock's claim, the trial court neither failed to exercise its independent judgment nor simply adopted SR Franchising's proposed relief.